Gist, Jason M (LAW)
---

| | |
|---|---|
| **From:** | Gist, Jason M (LAW) |
| **Sent:** | Wednesday, February 19, 2014 7:02 AM |
| **To:** | Altshiler, Florina (LAW) |
| **Subject:** | RE: Poole et al |
| **Attachments:** | Larry Custer Opposition to Motion to Compel Records[1].doc |

I assume by Paul's e-mail that you went and complained about the motions. Here is the low-down on the motions. There are four of them. The first one is to get Tiburon of Kaleigh. We have to oppose those because it is our policy. It is a policy that I don't necessarily agree with, as I believe that due process says if we have access to it, the defense should be entitled to it. But, you can form your own opinion. Regardless, attached is a motion I did on discovery issues way back, and Tiburon is addressed at the end. Obviously you don't need to the medical/psych stuff, but you should read it all because the N.G. stuff is vital to the analysis of discovery we are obligated and not obligated to turn over. Murtagh will win the motion because he is on fairly decent footing legally, and I think because due process requires it.

Another motion is the motion to sever. Moot.

Another motion is "to establish the law of the case." Go through it, read all cases cited by Murtagh. My recollection is he is saying that co-conspirator statements that were made at the time of the event come in, but just because a co-defendant makes a statement to an officer doesn't make it a "co-conspirator statement." This may very well be moot as well given severance because of 'party opponent' exceptions to hearsay, but work your way through the cases. My recollection is that I thought Murtagh was right.

Finally, co-conspirator statements. This is one that will take some time. You need to read Bruton and the line of cases that follow Bruton on co-conspirator statements, and then you will need to read the transcripts I sent you to figure out what is and isn't "co-conspirator statements" that were made.

As for discovery, here is what I did. We had 248 pages. I sat down with defense counsel, all of them, and Jade, and went through stuff page by page. There were several things in Jade's case file that we didn't have. So I went through and scanned Jade's entire case file tab by tab, and bates stamped it electronically with the new Adobe system. That is where Julia's e-mail comes in about having up to 754 pages now. All of that discovery is in my I-Drive, and I will dump it into yours.

Paul mentioned the motions were 'well overdue.' I talked with Murtagh about the case and the fact that it may go to you, and he said he was fine with taking more time on the motions once we figured out a position on severance.

So here's my frustration. I have no idea what you talked about with Paul on this, and I don't much care. But my guess is you hadn't read the motions at all before doing so to see if the sky was falling. I came to talk to you about them and you were in shootin' the bull with Kat. That is all well and good, and believe me, we all need to take time to do that around here. But twenty or thirty minutes later when you're still in there, I don't have the time to wait on you like that, especially when I had told you to come see me on the motions while you were in there. My frustration is that this seems to be a pattern

with you. You've said you want to be a good/great sex prosecutor, but I get the feeling you believe that just comes intuitively. It doesn't. It takes hours, days, months, to figure out things that are really complicated. Good example is the motion to sever. I talked with you probably a month ago about whether to sever these cases. Last week when we were discussing it again, you said you still wanted to sever but that you weren't "speaking intelligently on the issue because I haven't read the Bruton stuff." Bruton is complicated, Crawford makes it even more complicated. The fact that you hadn't read those cases in a month's time just about made me fall out of my chair.

I don't think you realize the goldmine you are sitting on. Those of us in the unit have been doing this stuff for a while, and I'd say we are all at least a little better than average. But we've all spent too many midnights in the office, or at home working, to get to that point. We didn't get there by doing 8-5, with every flex day off of course. If you want to learn things from us, we are here to teach you this stuff. But we're not here to hold your hand and walk you through every step. That is where you drive me insane. Paul and I told you that you needed power point for Bienek. That case screamed for a power point. For several days, including over a weekend, you kept telling me you didn't know how to do power point. Over a weekend? My expectation would have been that you would have spent the weekend googling "how to do a power point presentation," or something. Yet when I then told you to be here at 7:30 in the morning to go through it, you seemed appalled that I would show up so early (despite the fact that I wasn't the one in trial), and then you didn't even show up. It was as if the next day would come and you would suddenly know how to do it. It doesn't work that way. Another example is Dillard. You told me for a year you wanted to do that case with me. But several months ago I had two hearings on probably the most important issue in the case, suppression of DNA results. I spent countless nights working through that stuff. Yet when I told you the hearings were taking place, you informed me that they were on your flex day.

The folks in this unit will do anything for each other. Last week I had to relearn a video program that I hadn't used in over a year to make Jenna a trial exhibit. I worked until almost midnight to do it, and was in the office the next day by 7:30 to make sure she had it and it worked. But I also know that Jenna would be here until 2 a.m. to help me with stuff if I needed it. I've reached out to Paul, Jenna and Jack after 9 p.m. for trial issues more times than I can probably count. If I want new perspective on something, go to Jonas and he'll give you fifty new ways to look at something that you couldn't have possibly thought of. All of us have experience that are a good resource of information. But you have to put in the effort as well. Sitting back saying "I don't know how to do power point" doesn't get you anywhere. You go solve the problem. After all these years, I've learned that we have figured out what to do in about 80% of situations, and in the other 20% we have figured out the places to go look for the answers and resolve our problem, no matter how long it takes.

All of this is a long-winded way of saying that you haven't shown me you are committed to this thing we do here. Bruton is complicated, but it's far less complicated if you actually read the case. Power point can be tough, but showing up to learn it is 75% of the task. This is not intuitive, it is learned over time, through experience and ton of work and study. I don't have all the answers, and the others in the unit have far more to teach me than I have to teach them. But I will search for the answers to solve my problems. To this point, I feel like you've wanted the answers handed to you. It doesn't really work that way. Most of us can you teach you power point, or the minutiae of an area of law. But we can't teach you commitment. And when you don't show up for the details, our patience wears thin pretty quick.

 Let me know if you have any other questions on the motions.

Jason Gist
Assistant District Attorney

| | |
|---|---|
| **From:** | Gist, Jason M (LAW) |
| **Sent:** | Monday, May 12, 2014 9:18 PM |
| **To:** | Altshiler, Florina (LAW) |
| **Subject:** | RE: Eagle River case |

Ok, did you not listen to what I said when we talked this afternoon? I told you that I met with Julia, Paul, John, and Jim (now that I recall, Jim wasn't there, his investigator was). I told you that John asked for some items and it turned out Jade had them in his binder, but I did not have copies of them. So I told defense counsel at that meeting that I would copy Jade's entire binder and send it over to them. So I went through and scanned it all, by divider from the binder. That is what I showed you was on our server - all the discovery scanned in to this point.

Then I told you that Jim sent a request over and that I forwarded it to Jade to get those items. I was not aware at this point whether Jade had done that or not. But you asked me if it was Ashley's job as the paralegal to go through what we've discovered, and compare that to Jim's request. I told you that no, not really, that is something I would do myself, not have Ashley do. I identified some things that I felt like we probably had already discovered - for example, the arrest warrants. My recollection was that the warrants were in the file, but I could not recall. So I told you that you should go through it and see what we had. I did not say that we provided most of these items when I copied Jade's binder. I said that you, not Ashley, should check to make sure that was done. Some of the things I do not believe exist - for example, I am pretty confident that when SWAT goes out on an arrest warrant, they don't do any supplemental reports if nothing of significance happens. So if they show up, make an arrest with no incident, that is generally not something they would write supplemental reports on.

The disk 9 that Jim is talking about - is that the liquor store video? I can tell you that I never saw the video, and neither did Jade. We could not get it to play. Several of the items on the list Jade should be able to get us, assuming they exist. If he took photos or recorded interviews, he can get us those. We just need to get on him again to get that done. I had sent Jim's request to Jade a couple of times and did not realize he still did not get those items for us. I feel like this is the second or third time we've had this conversation.

Bottom line though, we do not get to say "those aren't in our possession." If APD has them, we need to get them. If they are not within our control at all - for example, C/W's medical records from ANMC, we could potentially get them by subpoena if Jade never collected them, but we are not required to do so. We don't have to do that as they are not in our possession, but if it is not in the previous discovery, it is likely something we would want to have.

Did you go through all 500+ pages of the scanned discovery at the end of the day today? Since you sent that e-mail to the defense within about 20 minutes of me talking to you, I'm thinking not. I am not really sure what else to do with this case. I told you that you should review the items we've sent out to see if any of Jim's requests are in there - because for example, I thought warrants were already in there - and then let them know, and get on Jade about the rest. Instead, right after I left, you sent the defense an e-mail saying I told you we already gave them that stuff, and if we didn't, then it is not in our possession? I am not sure what else I can do here. I have told you many times I would continue to help you with this case, and I will. But you need to listen what I say to you and follow the directions I give on it. There really are no shortcuts with this stuff. When I tell you to go through it all - i.e. don't pawn it off on Ashley to do it - go through it. Don't turn around and just tell the defense it may have been sent out, or maybe not, and leave it at that. And certainly don't tell the defense that I told you that. This stuff takes time to get through. It's tedious, time-consuming work. But it's necessary.

This is a complicated case, both legally and factually. I gave it to you because you could learn a ton from it. Like the Bruton issues we talked about way back when. You could have learned the details of co-defendant statements, how they work, what is admissible, etc. Instead, I think you opposed motions at one point without having ever read the Bruton or its progeny to figure out how all that stuff works. Now, you can learn about the complicated discovery stuff we routinely go through in sex cases. But it sounds like you haven't reviewed the discovery at all, even after I specifically told you that was what you should do. What else do you need me to do here? I'll help you, I will. But when I give you direction on something and I feel like you are looking for the fastest, easiest way to resolve the problem with the most shortcuts you can find, you do it. Then when you pass that off on me to Paul like the motions, or now in this case the defense attorneys that I've worked with for years on complicated stuff like this, it

Exhibit E

starts to piss me off. There are no shortcuts in this job. In misdos, sure. Property and drugs, maybe. But when you're dealing with the type of stuff we are dealing with, there are none. You have to take the time to do. I'll help, but you gotta listen.

---

**From:** Altshiler, Florina (LAW)
**Sent:** Monday, May 12, 2014 7:11 PM
**To:** Gist, Jason M (LAW)
**Subject:** Fwd: Eagle River case


Florina Altshiler
Assistant District Attorney
Anchorage District Attorney
310 K Street, suite 520
Anchorage, Alaska 99501
(907) 269-6371

Begin forwarded message:

> **From:** "Moudy, Julia D (DOA)" <julia.moudy@alaska.gov>
> **Date:** May 12, 2014 at 6:59:43 PM AKDT
> **To:** "Corrigan, Jim W (DOA)" <jim.corrigan@alaska.gov>
> **Cc:** "Altshiler, Florina (LAW)" <florina.altshiler@alaska.gov>, "Parrish, John G (DOA)" <john.parrish@alaska.gov>, "Murtagh, John (DOA sponsored)" <jmmalaska@hotmail.com>, "Maslakowski, Paul A (DOA)" <paul.maslakowski@alaska.gov>, "Carter, Ashley E (LAW)" <ashley.carter@alaska.gov>
> **Subject: Re: Eagle River case**
>
> The last I heard from Jason is that he was working on getting us these things. This is the first response like this I have gotten, Florina
>
>
> On May 12, 2014, at 5:36 PM, "Corrigan, Jim W (DOA)" <jim.corrigan@alaska.gov> wrote:
>
>> Florina,
>>
>> I do not have the requested items. I have been asking for them since at least January (I believe we go back to September on some of the requests).
>>
>> Even if not technically on your desk, possession is imputed to your office.
>>
>> With respect to disc 9, we still have error codes. If your office believes it to be an issue with program, kindly advise which program your office is running to access this disc.
>>
>> Thanks,