## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................ -iii-

PRELIMINARY STATEMENT ................................................. 1

QUESTIONS PRESENTED .................................................... 3

STATEMENT OF FACTS .................................................... 4

THE MOTION ................................................................... 7

POINT I .............................................................................. 10
    THE PLAINTIFFS HAVE NOT SHOWN THAT
    THEIR CASE IS SEVERELY PREJUDICED BY
    THEIR INABILITY TO INSPECT THE
    DEFENDANTS' SINGLE MISSING TOPOGRAPHY 10

POINT II ........................................................................... 23
    THE PLAINTIFFS HAVE NOT SHOWN THAT
    LAZZARO WAS ON NOTICE THAT THE MISSING
    PRE-OPERATIVE TOPOGRAPHY WOULD BE
    NEEDED FOR FUTURE LITIGATION 23

POINT III .......................................................................... 25
    THE PLAINTIFFS HAVE NOT SHOWN THAT KEY
    PHYSICAL EVIDENCE HAS BEEN
    INTENTIONALLY OR NEGLIGENTLY
    DESTROYED AND THE COURT BELOW FOUND
    NO INTENT 25

POINT IV ........................................................................... 34
    THE MATTER WAS INCORRECTLY REFERRED
    TO A J.H.O. FOR AN INQUEST ON DAMAGES 34

Exhibit P
Page 1 of 46
Case 3:16-cv-00259-SLG   Document 31-16   Filed 01/22/18   Page 1 of 46
SOA 001201

**CONCLUSION**..................................................................... 35

{G0030555}

EIM0088

–ii–

Case 3:16-cv-00259-SLG   Document 31-16   Filed 01/22/18   Page 2 of 46

SOA 001202

# TABLE OF AUTHORITIES

**Cases:**                                                                          **Page**

Arons v. Jutkowitz, 37 A.D.3d 94, 825 N.Y.S.2d 738 (2d Dept. 2006)
       15


Baglio v. St John's Queens Hosp., 303          A.D.3d          341
       23, 27, 28


Chung v. Caravan Coach Company, 285 A.D.2d 621, 728 N.Y.S.2d 767
(2d Dept. 2001) ............................................................................31-33


Codling v. Paglia, 32 N.Y.2d 330, 345 N.Y.S.2d 461, 298 N.E.2d 622
       14


Coley v. Michelin Tire Corp., 99  A.D.2d  795,  472  N.Y.S.2d  125
       14


Conderman v. Rochester Gas & Electric Corp., 262  A.D.2d  1068,  693
N.Y.S.2d 787 (4th Dept. 1999) ........................................................ 14


De Los Santos v. Polanco, 21 A.D.3d 397, 799 N.Y.S.2d 776 (2d Dept.
2005) 30


Denoyelles v. Gallagher, 40 A.D.3d 1027, 834 N.Y.S.2d (2d Dept. 2007)
       16

Exhibit P
Page 3 of 46
Case 3:16-cv-00259-SLG   Document 31-16   Filed 01/22/18   Page 3 of 46
SOA 001203

DiDomenico v. C&S Aeromatik Supplies, Inc., 252 A.D.2d 41, 682 N.Y.S.2d 452 (2d Dept. 1998) ................................................... 7, 23, 24

Ferrer v. Stofsky, 204 A.D.2d 386, 611 N.Y.S.2d 635 (2d Dept. 1994) 26

Freeman Lumber Co., Inc. v. A.C. Dutton Lumber Corp., 220 A.D.2d 641, 632 N.Y.S.2d 965 (2d Dept. 1995) .............................................. 26

Gadley v. U.S. Sugar Co., 259 A.D.2d 1041, 1042, 688 N.Y.S.2d 350 (4th Dept. 1999) ................................................................................. 10

Halloran v. Virginia Chems., 41 N.Y.2d 386, 393 N.Y.S.2d 341, 361 N.E.2d 991 ................................................................................... 14

Haviv v. Bellovin, 39 A.D.3d 708, 832 N.Y.S.2d 454 (2d Dept. 2007) 2, 8, 11,                                                                    23, 24

Herbert v. City of New York, 12 A.D.3d 209, 783 N.Y.S.2d 807 (1st Dept. 2004) ........................................................................................ 11

Iannucci v. Rose, 8                                A.D.3d                              437 23

Jackson v. Melvey, 56     A.D.2d     836,     392     N.Y.S.2d     312) 14

Kerman v. Martin Friedman, CPA, P.C., 21 A.D.3d 997, 801 N.Y.S.2d 387 (2d Dept. 2005) ........................................................................ 27

{G0030555}

EIM0088

–iv–

Exhibit P
Page 4 of 46
SOA 001204

Kirkland v. New York City Housing Authority, 236 A.D.2d 170, 666
N.Y.S.2d 609 (1st Dept. 1997)........................................................ 7, 19

Kirschen v. Marino, 16 A.D.3d 555, 792 N.Y.S.2d 171 (2d Dept. 2005)
        21

Marro v. St. Vincent's Hospital, 294 A.D.2d 341, 742 N.Y.S.2d 327 (2d
Dept. 2002)........................................................................................ 21

Myers v. Sadlor, 16 A.D.3d 257, 791 N.Y.S.2d 549 (1st Dept. 2005)
        11, 15

Mylonas v. Town of Brookhaven, 305 A.D.2d 561, 759 N.Y.S.2d 752
(2d Dept. 2003) ................................................................................ 32

Osinski v. Taefi, 13 A.D.3d 1205, 787 N.Y.S.2d 591 (4th Dept. 2004)
        25

Otis v. Bausch & Lomb Inc., 143 A.D.2d 649, 532 N.Y.S.2d 933 (2d
Dept. 1988)................................................................................ 13, 14

Piazza v. Great Atlantic & Pacific Tea Co. Inc., 300 A.D.2d 381, 753
N.Y.S.2d 86 (2d Dept. 2002) ........................................................... 32

Rotuba Extruders v. Ceppos, 46 N.Y.2d 223, 413 N.Y.S.2d 141 (1978)
        26

{G0030555}
EIM0088

—v—

Rudnitsky v. Robbins, 191 A.D.2d 488, 594 N.Y.S.2d 354 (2d Dept. 1993) 26

Scansarole v. Madison Square Garden L.P., 33 A.D.3d 517, 827 N.Y.S.2d 1 (1st Dept. 2006).................................................................. 15

Sillman v. 20th Century-Fox Film Corp., 3 N.Y.2d 498 (1957) 26

Soto v. New York City Transit Authority, 2006 N.Y. Slip Op. 00147, 806 N.Y.S.2d 420 (2d Dept. 2006)........................................... 27

Tawedros v. St. Vincent's Hospital of New York, 281 A.D.2d 184, 721 N.Y.S.2d 237 (1st Dept. 2001)............................................. 10

Tomkins v. Armstrong, 7 Misc.3d 311, 793 N.Y.S.2d 736 (Kings County 2005) 13

Tommy Hilfiger, USA v. Commonwealth Trucking, Inc., 300 A.D.2d 58, 60, 751 N.Y.S.2d 446 (1st Dept. 2002)............................... 21

Treston v. Allegretta, 181 A.D.2d 470, 581 N.Y.S.2d 289 (1st Dept. 1992) 13

Winegrad v. New York Univ. Med. Ctr., 64 N.Y.2d 851, 487 N.Y.S.2d 316 (1985) ......................................................................... 26

{G0030555}

EIM0088

–vi–

Yager v. Arlen Realty & Dev. Corp., 95 A.D.2d 853, 464 N.Y.S.2d 214
     14

Zilm v. Koch, 211 A.D.2d 675, 622 N.Y.S.2d 459 (2d Dept. 1995)
     26

Exhibit P
Page 7 of 46
Case 3:16-cv-00259-SLG   Document 31-16   Filed 01/22/18   Page 7 of 46
SOA 001207

{G0030555}

EIM0088

–viii–

{G0030555}

EIM0088

–ix–

Exhibit P
Page 9 of 46

SOA 001209

**Statutes:**

22 NYCRR §600.10(v) ........................................................ 36

CPLR §3126........................................................................ 27

**Other:**

Weinberger, NY Prod Liab 8:05 ........................................ 14

{G0030555}

EIM0088

—x—

Case 3:16-cv-00259-SLG   Document 31-16   Filed 01/22/18   Page 10 of 46

SOA 001210

## PRELIMINARY STATEMENT

In this medical malpractice action, the defendants, Douglas R. Lazzaro, M.D. and Lazzarro Eye Center, LLP (hereinafter collectively "Lazzaro" or "Dr. Lazzaro"), appeal to this Court from the order of the Supreme Court, Kings County (Jackson, J.) dated July 3, 2007, which granted plaintiffs' motion to strike the defendants' answer based upon an alleged spoliation of evidence. The Court's order also set this matter down for an inquest on damages before a J.H.O. (3-6).[1]

As will be discussed more fully herein, this case involves an alleged negligent performance of Lasik eye surgery by Dr. Lazzaro. During the course of discovery it was determined that a pre-operative topography of the plaintiff's eyes, taken by Dr. Lazzaro, was not available due to a malfunction with his Humphrey Atlas Topography machine as it failed to electronically store this (380-381). Despite this, the plaintiffs obtained other pre and post operative topographies during discovery (625, 626, 639, 642 and 643). Further, Dr. Lazzaro exchanged

---

[1]

The pages in parentheses refer to the Record on Appeal

{G0030555}
EIM0088

1

Case 3:16-cv-00259-SLG   Document 31-16   Filed 01/22/18   Page 11 of 46
SOA 001211

the plaintiff's treatment records and the plaintiffs secured records from other ophthalmologists from both before and after Dr. Lazzaro's surgery (132-163).

In the order from which Dr. Lazzaro appeals, the Court below struck the defendants' answer premised upon a theory that the missing topography constituted spoliation of evidence (3-6). In its order, the Court below did not, however, take into consideration this Court's recent decision in Haviv v. Bellovin, 39 A.D.3d 708, 832 N.Y.S.2d 454 (2d Dept. 2007) regarding spoliation of evidence. Further, the Court below set the matter down for an inquest on the issue of damages before a J.H.O., which the defendants contend is not the appropriate means of determining damages as the Lazzaro defendants are entitled to a jury trial on damages.[2]

---

[2]

 Subsequent to the receipt of the Court's order, the parties stipulated (1) to withdraw the matter from the inquest calendar, (2) to try the matter before a jury, and (3) to place the matter before Honorable Gerard Rosenberg for a further Pre-Trial Conference on September 25, 2007.

Exhibit P
Page 12 of 46
SOA 001212

{G0030555}

EIM0088

3

Exhibit P
Page 13 of 46

SOA 001213

## QUESTIONS PRESENTED

1.      Whether the Court below erred in striking the answer of the Lazzaro defendants, where a justifiable excuse was offered as to why one pre-operative topography was missing?

2.      Whether the Court below erred in failing to recognize that the Lazzaro defendants established that there was other evidence available to the plaintiffs to establish their claims sounding in alleged medical malpractice?

3.      Whether the plaintiffs failed to establish severe prejudice in their alleged inability to prosecute their case by not having the single missing topography?

4.      Whether the Court below improperly scheduled this matter for an inquest on damages before a J.H.O. thereby denying the Lazzaro defendants a jury trial on damages?

It is respectfully submitted that each of these questions must be answered in the affirmative.

{G0030555}
EIM0088

4

## STATEMENT OF FACTS

It is undisputed that the Lazzaro defendants performed Lasik surgery on the plaintiff's eyes on April 22, 2003. The general theme to the respondents' case is that Lazzaro negligently performed Lasik surgery on the plaintiff as they allege the plaintiff was not a candidate for Lasik surgery (236 and 663).

The relevant facts include that the plaintiff had been a patient of non-party Dr. Brookner in August 2001 (620-626). On August 6, 2001, Dr. Brookner performed a topography of the plaintiff's eye (625-626). A topography enables a physician to look at the surface of the patient's cornea to rule out keratoconus and highly irregular astigmatism (379).

Following the August 2001 treatment with Dr. Brookner, the plaintiff did not have Lasik surgery performed by Dr. Brookner (620-626). The plaintiffs argue that Dr. Brookner had determined that James Cook was not a suitable Lasik candidate (236 and 663).

The plaintiff first presented to the clinic at Kings County Hospital on April 3, 2003 and was seen by Dr. Lazzaro (633). On or about April 6, 2003, the plaintiff again presented to Dr. Lazzaro for a Lasik evaluation, which included Dr. Lazzaro performing a topography of the

{G0030555}

EIM0088                                        5

plaintiff's eyes (628-631). This single pre-operative topography from April 6, 2003 is missing due to a technical failure involving Dr. Lazzaro's Humphrey Atlas Topography machine (380-381 and 307). Nonetheless, Dr. Lazzaro has testified that, during the Lasik evaluation, the plaintiff had "regular astigmatism" (380) and Dr. Lazzaro noted same in his records (649). Further, Dr. Lazzaro described the symmetrical bow-tie pattern of the missing pre-operative topography (384-385). The topography showed regular astigmatism with a steep axis of symmetry where the bow tie was located at 160 degrees in the right eye (385); the axis of symmetry for the left eye was 15 degrees (386). It was Dr. Lazzaro's custom and practice not to print patients' topographies but rather to review them electronically (381).

Thereafter, on April 22, 2003, Dr. Lazzaro performed Lasik surgery on the plaintiff's eyes (627 and 646-647). Dr. Lazzaro took post-surgical topographies of the plaintiff's eyes on July 1, 2003 and November 11, 2003 (639 and 642-643). Those topographies, along with the plaintiff's entire medical record from Lazzaro's office, have been exchanged (132-163). The plaintiffs filed their summons and complaint on September 26, 2005 (13-21), almost two years after the technical

{G0030555}

6

SOA 001216

failure involving Dr. Lazzaro's Humphrey Atlas Topography machine on

November 18, 2003 (380-381 and 307).

{G0030555}
EIM0088

7

SOA 001217

## THE MOTION

In support of their motion, the plaintiffs argued that the Lazzaro defendants' spoliation of critical medical evidence compelled striking the Lazzaro answer (232-233). Citing DiDomenico v. C&S Aeromatik Supplies, Inc., 252 A.D.2d 41, 682 N.Y.S.2d 452 (2d Dept. 1998), the plaintiffs argued that the absence of the single pre-operative topography was so severe that the plaintiffs were prejudicially bereft of appropriate means to present their claims (238). Citing Kirkland v. New York City Housing Authority, 236 A.D.2d 170, 666 N.Y.S.2d 609 (1st Dept. 1997), the plaintiffs argued that the loss "irrevocably stripped" them of their opportunity to prove medical malpractice and left them open to extreme prejudice (238).

Further, the plaintiffs alleged that the Lazzaro defendants lacked "credibility," stating "defendants will argue that the loss of Mr. Cook's pre-operative topographies was inadvertent. The trust of the assertion is suspect" (240). The plaintiffs also alleged "the Lazzaro defendants destroyed [the topography] to cover up evidence of malpractice" (240). Such assertions were without support and highly prejudicial.

Exhibit P
Page 18 of 46
Case 3:16-cv-00259-SLG   Document 31-16   Filed 01/22/18   Page 18 of 46
SOA 001218

Lazzaro opposed the motion (244-274) by arguing that the plaintiffs were not entitled to spoliation sanctions as discovery had been complied with (245-250). Further, Lazzaro argued the plaintiffs had not shown that their case would be severely prejudiced by their inability to inspect the unavailable topography (250-256). Lazzaro contended the plaintiffs had not shown that a key piece of physical evidence was intentionally or negligently disposed (256-260), citing to Lazzaro's deposition testimony (380-381) and the Humphrey Atlas Topography machine maintenance call report (307).

Thereafter, on the date of oral argument, Lazzaro presented the Court this Court's recent decision in Haviv, supra (729-731).

The order below granted the plaintiffs' motion, essentially finding that Lazzaro negligently failed to maintain the topography (5).

Lazzaro contends that the Court below was correct in finding that the appellant's loss of the single topography was not deliberate or intentional (5). However, Lazzaro also contends that the Court below erred in finding that the loss of the topography was negligent and that such negligence warranted the striking of Lazzaro's answer (5-6). Lazzaro also argues that the Court further erred in finding that this single

{G0030555}

Exhibit P
Page 19 of 46
SOA 001219

pre-operative topography was a crucial piece of evidence that was material to the litigation, wherein its loss precluded the respondents from prosecuting their case. The Court below failed to consider that the plaintiffs had Dr. Brookner's pre-operative topography as well as Lazzaro's records and Lazzaro's two post-operative topographies, including a report regarding the results of the missing topography.

It is the appellants' position that the Court also erred in setting this matter down for an inquest on damages before a J.H.O. as such deprives them of their right to a jury trial.

For these reasons, the order of the Court below must be reversed.

Exhibit P
Page 20 of 46
SOA 001220

## POINT I

## THE PLAINTIFFS HAVE NOT SHOWN THAT THEIR CASE IS SEVERELY PREJUDICED BY THEIR INABILITY TO INSPECT THE DEFENDANTS' SINGLE MISSING TOPOGRAPHY

The harsh remedy of striking Lazzaro's answer is a remedy reserved only for those rare cases where a prejudiced party can show conclusively that the discovery default was deliberate or contumacious. Tawedros v. St. Vincent's Hospital of New York, 281 A.D.2d 184, 721 N.Y.S.2d 237 (1st Dept. 2001); Gadley v. U.S. Sugar Co., 259 A.D.2d 1041, 1042, 688 N.Y.S.2d 350 (4th Dept. 1999). In its decision the Court below found the Lazzaro defendants' loss of evidence to be a negligent act, and thus not deliberate or contumacious (5). In Gadley, the Appellate Court held that the striking of an answer "should only be granted where it is *conclusively* shown that the discovery default was deliberate or contumacious." Id.

In Tawedros, supra, the Appellate Division again held that the lower court should not strike a pleading unless the party seeking relief shows that the destruction of the record sought was willful and contumacious, concluding, "[t]he careless loss of a record is not willful."

EIM0088

{G0030555}

11

SOA 001221

Id.  In the instant matter, the Court below, although finding that the conduct was not willful or contumacious but merely negligent, clearly ignored this requirement.  Further, the Court below provided no support for its finding of negligence.

The Appellate Division, First Department has issued rulings relevant to the facts of this case.  In Herbert v. City of New York, 12 A.D.3d 209, 783 N.Y.S.2d 807 (1st Dept. 2004), the Appellate Court refused to punish the defendant on spoliation grounds since the plaintiff did not establish that the unavailability of the original photographs or color copies thereof would impair his ability to present his case.

In Myers v. Sadlor, 16 A.D.3d 257, 791 N.Y.S.2d 549 (1st Dept. 2005),  the Appellate Division refused to strike the pleadings when an original MRI of the plaintiff's cervical spine taken shortly after the accident at issue, was "inadvertently 'corrupted' and destroyed by the medical imaging facility;" the Court concluded that the facts failed to show that the MRI was destroyed pursuant to some intentional or willful act.

In Haviv, supra, this Court reversed the lower court's order which imposed sanctions to the extent of striking a defendant's answer after a

defendant physician lost his entire medical chart referable to the plaintiff. This Court reasoned that the plaintiff failed to establish that the defendant was on notice that such evidence might be needed for future litigation (despite the Public Health Law requirement to maintain same), and therefore, the drastic sanction of striking the defendant's answer based on alleged spoliation of evidence was unwarranted.

In the instant matter, the Lazzaro pre-operative topography from April 6, 2003 was inadvertently destroyed due to technical failure involving the Humphrey Atlas Topography machine on November 18, 2003 (307), almost two years before suit was commenced on or about September 26, 2005 (13-21). The plaintiffs never offered any proof of any notices or discovery demands served prior to the date of loss and seeking to preserve the topography.

In its decision to strike the defendants' answer, the lower Court recognized that the plaintiffs could not prove that the Lazzaro defendants intentionally deleted and/or destroyed the topography prior to the commencement of the suit, and, instead, found the defendants negligent in this regard (5-6).

EIM0088 {G0030555}

13

The plaintiffs must establish "proof of the destruction of evidence, the existence of a duty, damages and proximate cause," even if there was negligent as opposed to intentional spoliation. Tomkins v. Armstrong, 7 Misc.3d 311, 793 N.Y.S.2d 736 (Kings County 2005). Here, there was no showing that the "missing" topography was a "key piece of evidence" because the plaintiffs have in their possession other topographies and topography reports, including Dr. Brookner's topography taken 18 months prior on August 6, 2001 (625-626).

It is well recognized that, in cases where evidence has been lost or destroyed, there is often sufficient circumstantial evidence available to warrant a trial on the issues, so as to avoid the drastic remedy of dismissal. Otis v. Bausch & Lomb Inc., 143 A.D.2d 649, 532 N.Y.S.2d 933 (2d Dept. 1988); see also Treston v. Allegretta, 181 A.D.2d 470, 581 N.Y.S.2d 289 (1st Dept. 1992). The appellants contend that the lower Court failed to appreciate the availability of such other circumstantial evidence.

For instance, in Otis, supra, a personal injury action was brought by an individual to recover damages for eye injuries when she contracted corneal ulcers allegedly from wearing extended-wear contact lenses

EIM0088 {G0030555} 14

manufactured by the defendant but which were no longer on the market. This Court ruled in <u>Otis</u>, <u>supra</u>, that the fact that the product had been destroyed does not by itself mean an end to the plaintiffs' action. This Court further stated that, while the best and most conclusive proof is the product itself, both the existence of a departure as well as the contents of the product are issues of fact capable of proof by circumstantial evidence (citing <u>Coley v. Michelin Tire Corp.</u>, 99 A.D.2d 795, 472 N.Y.S.2d 125; <u>Yager v. Arlen Realty & Dev. Corp.</u>, 95 A.D.2d 853, 464 N.Y.S.2d 214; <u>Weinberger, NY Prod Liab</u> 8:05).

In <u>Yager</u>, <u>supra</u>, this Court ruled that the fact that the item in question cannot be located and that there are no records or photographs indicating the condition of the item, is not necessarily fatal to plaintiffs' action. The <u>Yager</u> Court held that a plaintiff's case "may be proven by circumstantial evidence (see <u>Codling v. Paglia</u>, 32 N.Y.2d 330, 345 N.Y.S.2d 461, 298 N.E.2d 622; <u>Halloran v. Virginia Chems.</u>, 41 N.Y.2d 386, 393 N.Y.S.2d 341, 361 N.E.2d 991; <u>Jackson v. Melvey</u>, 56 A.D.2d 836, 392 N.Y.S.2d 312)."

In <u>Conderman v. Rochester Gas & Electric Corp.</u>, 262 A.D.2d 1068, 693 N.Y.S.2d 787 (4th Dept. 1999) a utility company could not be

Exhibit P
Page 25 of 46

SOA 001225

held subject to spoliation sanctions when responding to an emergency situation that affected the public safety, and where it discarded items in good faith and pursuant to its normal business practices. The Court ruled that it is unreasonable to preserve evidence in anticipation of the possibility of future litigation.

Here, an unforeseen technological failure destroyed Lazzaro's electronic charting of the plaintiff's cornea. There are no statutes or case law that deal specifically with electronic failure or topographies, except for the discussion of the destroyed MRI in Myers, supra. The loss of evidence due to "inadvertent, technical mishaps" is not grounds for spoliation sanctions or the striking of an answer. Scansarole v. Madison Square Garden L.P., 33 A.D.3d 517, 827 N.Y.S.2d 1 (1st Dept. 2006). The Lazzaro defendants produced the plaintiff's medical records, including the results of the missing topography which were recorded into the patient's medical records and which were exchanged through discovery (132-163, 628-631, 639, and 642-643). Dr. Lazzaro testified specifically about what the topography revealed (384-386).

In Arons v. Jutkowitz, 37 A.D.3d 94, 825 N.Y.S.2d 738 (2d Dept. 2006), this Court held that the Court below providently exercised its

Exhibit P
Page 26 of 46
Case 3:16-cv-00259-SLG   Document 31-16   Filed 01/22/18   Page 26 of 46
SOA 001226

discretion in not striking a defendant-physician's answer; despite the loss of the decedent's medical records, the decedent's medical history was reconstructed from alternate sources, and the plaintiffs could not establish that they were "severely prejudiced." Similarly in Denoyelles v. Gallagher, 40 A.D.3d 1027, 834 N.Y.S.2d (2d Dept. 2007), this Court refused to strike a defendant's answer where the plaintiffs failed to prove that a "modification" of the defendant's computer records was done in bad faith, or that said modification rendered the plaintiffs 'prejudicially bereft of appropriate means' to prove their claims (citations omitted)."

There is neither case law nor statutory support for respondents' blanket assertion that, in addition to a patient's medical records, the originals of all tests and reports which are maintained "electronically" must also be maintained in hard copy. The lower Court did not address this proposition in its order (3-6).

It was Dr. Lazzaro's custom and practice not to print copies of the topographies which he maintained electronically (381-383). There is no standard that requires physicians to maintain hard copies of all data which is already maintained electronically. Such a standard would be costly to employ and overwhelmingly burdensome to maintain. Additionally, the

EIM0088
{G0030555}

17

required maintenance of all electronic data in hard copy would virtually eliminate the utility of electronic records in the first instance.

With the advent of electronic record-keeping and technologically advanced medical equipment, it is not uncommon for medical professionals to maintain test reports, and topographies in particular, in electronic form. Such a system of record maintenance has been both easy and convenient. Nonetheless, Dr. Lazzaro manually recorded the "results" and "impressions" of the topography in the patient's chart (153).

In addition to the recorded results of the missing topography, the respondents have the benefit of another pre-operative topography from non-party, Dr. Brookner (625-626). As the Lazzaro defendants argued to the Court below, the fact that the prior treating physician's topography and report have been produced, which plaintiffs' counsel argued showed that the plaintiff was not a surgical candidate (236 and 663), it would appear that the plaintiffs can establish their case through the use of significant other circumstantial evidence.

While plaintiffs' counsel did provide an expert affidavit in support of their assertion that the electronic data from the topography machine should have been backed-up to avoid inadvertent deletion (170-174),

Exhibit P
Page 28 of 46
Case 3:16-cv-00259-SLG   Document 31-16   Filed 01/22/18   Page 28 of 46
SOA 001228

such does not in and of itself create a standard of care with regard to record keeping, and this Court should reject such Monday morning quarterbacking. First, the Humphrey Atlas Topography machine is not typically equipped with a back-up drive and, to Dr. Lazzaro's knowledge, the machine at issue did not have a data back-up system available at the time (383-384). Second, while the plaintiffs' medical expert may comment about departures in the standard of care, as this Court is well aware, a medical expert may neither comment upon nor interpret the law. Plaintiffs' counsel was attempting to use an expert affidavit in the absence of any case law or statutory support for his assertion that there was a legal requirement to "back up" this type of data.

While, in hindsight, data back-up systems may have been beneficial, it is unreasonable to now hold the defendants accountable for not preventing an unforeseen event. The Lazzaro defendants had no way of anticipating the technological problems that occurred and resulted in the erasure of data; upon contacting the Humphrey company for maintenance and repair of the machine, Dr. Lazzaro was informed that the data had been "wiped out" (383).

{G0030555}
EIM0088

19

Further still, even if the Lazzaro defendants allegedly departed from the standard of care by losing the topography as plaintiffs and their expert assert, a point certainly not conceded, such a departure is not equivalent or tantamount to an intentional or even negligent destruction of evidence. At trial, the plaintiffs can still attempt to establish a departure through all of the medical records, deposition testimony and other available proof. They have to call an ophthalmological expert at trial to establish damages; the non-prejudicial ruling would have been to have the plaintiffs call the same ophthalmological expert during the liability phase of the trial to try to establish a departure. The Court below erred by ruling otherwise.

In Kirkland, supra, a stove that caused a fire was removed and destroyed by the defendant/third-party plaintiff, before it impleaded a third-party defendant plumbing entity, which precluded that contractor from raising a defense that it properly installed the gas connections. The Appellate Court found that dismissal in Kirkland was not inappropriate because the loss of the "key piece of evidence" "irrevocably stripped" that party of useful defenses.

{G0030555}

EIM0088

20

Exhibit P
Page 30 of 46
SOA 001230

The plaintiffs in the present case have not offered any evidence that their case would be so severely prejudiced by their inability to inspect the topography in question that they would not be able to prosecute their claims. The respondents have the ability to establish their case with the use of circumstantial evidence particularly where the plaintiff's prior topography is available from Dr. Brookner and we know from plaintiffs' counsel's affirmation that plaintiff's counsel contends that the plaintiff was not a candidate for this Lasik surgery (236 and 663). Additionally, the plaintiff's medical records from Lazzaro, which contain the "results" of the missing topography, have been provided to plaintiffs' counsel.

Further, the Court below overlooked the fact that plaintiffs' counsel was able to provide a certificate of merit, indicative of the fact that he "consulted with at least one duly licensed physician" and concluded that the above-captioned matter had "reasonable merit" (652); clearly this was done prior to the plaintiffs knowing that the topography in issue was missing.

Exhibit P
Page 31 of 46
Case 3:16-cv-00259-SLG    Document 31-16    Filed 01/22/18    Page 31 of 46
SOA 001231

Therefore the Court's order based upon alleged spoliation must be deemed an improvident exercise of discretion and should be reversed. Kirschen v. Marino, 16 A.D.3d 555, 792 N.Y.S.2d 171 (2d Dept. 2005).

> While the striking of a pleading may be justified where a party destroys key physical evidence such that its opponents are 'prejudicially bereft of appropriate means to [either present or] confront a claim with incisive evidence' (citations omitted), outright dismissal remains a drastic remedy and is appropriate only where less severe sanctions have been ruled out.

Tommy Hilfiger, USA v. Commonwealth Trucking, Inc., 300 A.D.2d 58, 60, 751 N.Y.S.2d 446 (1st Dept. 2002).

In Marro v. St. Vincent's Hospital, 294 A.D.2d 341, 742 N.Y.S.2d 327 (2d Dept. 2002) this Court affirmed the order of the trial court which refused to grant the drastic remedy of dismissing the complaint where the plaintiff was responsible for the destruction of the motorcycle he was operating at the time of the accident. The motorcycle was the key piece

{G0030555}

EIM0088

22

Exhibit P
Page 32 of 46
SOA 001232

of evidence and its inspection was important on causation and damages issues. This Court held that there was other evidence available regarding the accident, including affidavits from three witnesses to the accident, several post-accident photographs of the motorcycle, the ambulance call report, emergency room records and other items, showing the plaintiff's condition on his presentation to the hospital.

## POINT II

### THE PLAINTIFFS HAVE NOT SHOWN THAT LAZZARO WAS ON NOTICE THAT THE MISSING PRE-OPERATIVE TOPOGRAPHY WOULD BE NEEDED FOR FUTURE LITIGATION

This Court in <u>Haviv</u>, <u>supra</u>, recently ruled that "in order to impose a sanction for spoliation of evidence, it must be established that the individual to be sanctioned was responsible for the loss or destruction of evidence crucial to the establishment of a claim or defense, at a time when he was on notice that such evidence might be needed for future litigation" (citing <u>Iannucci v. Rose</u>, 8 A.D.3d 437; <u>Baglio v. St John's Queens Hosp.</u>, 303 A.D.3d 341).

Further, in <u>DiDomenico,</u> <u>supra</u>, this Court determined that the sanction of spoliation was appropriate only where it was established that the spoliator was "on notice that the evidence might be needed for future litigation." In <u>DiDomenico</u>, <u>supra</u>, UPS was found to have violated two Court orders and willfully discarded its records.

Here, when the topography at issue was inadvertently destroyed, Dr. Lazzaro had no knowledge that there would be litigation regarding his treatment; in fact the summons and complaint were filed two years

Exhibit P
Page 34 of 46
Case 3:16-cv-00259-SLG   Document 31-16   Filed 01/22/18   Page 34 of 46
SOA 001234

later (13-21).  When Dr. Lazzaro evaluated the plaintiff for Lasik surgery on April 6, 2003, and subsequently performed the surgery, he had no actual knowledge, nor did he have any expectation, that he would be named in a medical malpractice lawsuit. In its review of <u>Haviv</u>, <u>supra</u>, this Court recognized that a physician cannot work under the assumption that every patient will one day bring a medical malpractice lawsuit against him.

The obvious distinction between this matter and <u>DiDomenico</u>, <u>supra</u> is that in <u>DiDomenico</u> this Court found that UPS acted with "knowledge, with persistence, without explanation or excuse, and in violation of two court orders, [therefore] its behavior was clearly willful."

In the instant matter, the Lazzaro defendants did not so act.  As set forth above, the Lazzaro defendants have a justifiable excuse for the inadvertent loss of data and their behavior was neither persistent nor willful.  Further, the Lazzaro defendants did not violate any court orders.  Therefore, <u>DiDomenico</u>, <u>supra</u>, is not applicable to the very different facts and circumstances of this case.

Exhibit P
Page 35 of 46
SOA 001235

## POINT III

### THE PLAINTIFFS HAVE NOT SHOWN THAT KEY PHYSICAL EVIDENCE HAS BEEN INTENTIONALLY OR NEGLIGENTLY DESTROYED AND THE COURT BELOW FOUND NO INTENT

The plaintiffs never set forth any evidence showing that Lazzaro intentionally or negligently disposed of key physical evidence. Similarly, the plaintiffs have not rebutted the defendants' reasonable explanation for their failure to produce the missing topography. In Osinski v. Taefi, 13 A.D.3d 1205, 787 N.Y.S.2d 591 (4th Dept. 2004), the Appellate Division refused to punish the defendant or even give a jury instruction on spoliation of evidence where the plaintiff failed to establish that original documents were destroyed with fraudulent intent and there was no reasonable explanation for failing to produce the evidence.

It is clear that there was never any intent, or even negligence on the part of Dr. Lazzaro, resulting in the loss of the topography. On the contrary, the fact that Dr. Lazzaro has a record of attempted repair of the topography machine (307) approximately two years prior to any notice of litigation, indicates that there were no suspicious motives which might have contributed to the loss of the digitally recorded topography.

{G0030555}

EIM0088

26

Further, the plaintiffs have not come forward with any evidence, from Dr. Lazzaro's deposition testimony or elsewhere, that the topography machine had anything but an unforeseen technical error resulting in the erasure of data, or that this was anything but truthful or accurate.

As this Court is well aware, like in a summary judgment setting, the Court's function is issue finding, not issue determination. <u>Sillman v. 20th Century-Fox Film Corp.</u>, 3 N.Y.2d 498 (1957). The Court cannot rule on the credibility of the parties, as issues of credibility are to be resolved by the trier of fact. See <u>Winegrad v. New York Univ. Med. Ctr.</u>, 64 N.Y.2d 851, 487 N.Y.S.2d 316 (1985); <u>Rotuba Extruders v. Ceppos</u>, 46 N.Y.2d 223, 413 N.Y.S.2d 141 (1978); <u>Zilm v. Koch</u>, 211 A.D.2d 675, 622 N.Y.S.2d 459 (2d Dept. 1995); <u>Ferrer v. Stofsky</u>, 204 A.D.2d 386, 611 N.Y.S.2d 635 (2d Dept. 1994); <u>Rudnitsky v. Robbins</u>, 191 A.D.2d 488, 594 N.Y.S.2d 354 (2d Dept. 1993). Further, any issues of credibility generated by the allegations create questions of fact which cannot be resolved as a matter of law. See <u>Freeman Lumber Co., Inc. v. A.C. Dutton Lumber Corp.</u>, 220 A.D.2d 641, 632 N.Y.S.2d 965 (2d Dept. 1995). Here, the trial Court accepted the plaintiff's inferences and

EIM0088 {G0030555}

27

deprived the Lazzaro defendants of an opportunity to set forth the merits of their defense.

The Court below ignored this Court's more recent holdings that, whether the request for spoliation relief is made under the common law or CPLR §3126, such should not be granted unless there is a showing of willful, deliberate or contumacious conduct. Soto v. New York City Transit Authority, 2006 N.Y. Slip Op. 00147, 806 N.Y.S.2d 420 (2d Dept. 2006); Kerman v. Martin Friedman, CPA, P.C., 21 A.D.3d 997, 801 N.Y.S.2d 387 (2d Dept. 2005). This is especially true where the plaintiffs cannot establish that Lazzaro negligently or intentionally destroyed what they would characterize as the key evidence, thereby depriving them the opportunity to prove their case. Soto, supra. Instead, the Court below relied entirely on the decision in Baglio, supra, which pre-dates the decisions in both Soto and Kerman, supra.

While this Court in Baglio affirmed the sanction of striking the defendant's answer for spoliation of evidence, the facts of that case are easily distinguishable from those in this case.

In the Baglio matter, one involving a brain damaged baby, the defendant hospital lost the plaintiff's fetal monitoring strips. Fetal

Exhibit P
Page 38 of 46

SOA 001238

monitoring strips are not saved electronically, they are instantaneously printed. The readings from the strips are not recorded elsewhere in the chart; rather the printouts are customarily attached to the mother's chart. The loss of the fetal monitoring strips left the plaintiffs without the ability to prosecute their case as there were no other fetal monitoring strips available and the strip "data" was not recorded elsewhere. This Court stated, "fetal monitoring strips were the most critical evidence to determine the fetal well-being . . .". Without the missing fetal monitoring strips, there was no other way to determine fetal well-being and the presence or absence of fetal distress.

However, in this ophthalmological case, we are dealing with the loss of a single pre-operative topography. The actual findings of such were recorded in Dr. Lazzaro's record dated April 6, 2003 (649) and testified about (384-386). Another topography taken by Dr. Brookner prior to the Lasik procedure performed by Lazzaro, as well as postoperative topographies, were disclosed to the plaintiffs (132-163 and 625-626). In the instant matter, unlike in the Baglio matter, the plaintiffs have a means of proving the medical malpractice claims against the defendants.

Exhibit P
Page 39 of 46

Additionally, unlike fetal monitoring strips, topographies are not commonly printed instantaneously nor is there a requirement to maintain printed copies of the topographies. While in hindsight copying the topographies may be a good practice, there is no evidence that such was the "standard" or required. It simply makes more sense to maintain the topographies, an electronically recorded study, in electronic form as opposed to in hard copy. For example, it is common practice to maintain copies of Microsoft Word documents, electronic records, as saved electronic data on the computer. We commonly print the records which are stored electronically only when the occasion so necessitates. It makes no sense to categorically print and maintain all electronically stored data in paper form.

Lazzaro's failure to simultaneously print all topographies is not the equivalent of the plaintiffs establishing medical malpractice; however, by the Court below striking Lazzaro's answer, that is essentially how it ruled. The striking of the defendants' answer as a procedural remedy is not a determination of the case on its merits. Every party is entitled to a determination on the merits.

{G0030555}
EIM0088

30

The Court below was clearly sold on the plaintiffs' speculative argument that the missing topography would have revealed that the Lasik surgery was contra-indicated for the plaintiff, a point certainly not conceded by Lazzaro, and their contention that they need this topography to prove their case. Ironically, the case for Lazzaro is equally disadvantaged by not having the topography available to establish that the Lasik procedure was indicated and proper. The Court ignored this important fact.

The Court below also ignored this Court's ruling that ". . .where the plaintiffs and defendants are equally affected by the loss of the items in their investigation of the accident and neither have reaped unfair advantage in the litigation, it is improper to dismiss a pleading on the basis of spoliation of evidence (citations omitted)." De Los Santos v. Polanco, 21 A.D.3d 397, 799 N.Y.S.2d 776 (2d Dept. 2005). In De Los Santos, this Court affirmed an order which denied the plaintiff's request to strike the defendant's answer, but which precluded the defendants from offering evidence on the issue of the point of impact of vehicles including a police vehicle, where the police vehicle involved was destroyed.

Exhibit P
Page 41 of 46
SOA 001241

In Chung v. Caravan Coach Company, 285 A.D.2d 621, 728 N.Y.S.2d 767 (2d Dept. 2001) where the plaintiff, a teacher's assistant, was injured during a ride on a bus during a school trip; she sued Caravan Coach Company which owned the bus, seven months after the accident. Thereafter, the trial court enjoined the defendant bus company from modifying or repairing the bus prior to an inspection by the plaintiff. In violation of the order, the bus remained in use and thereafter, in anticipation of an inspection by the New York State Department of Transportation, a Caravan mechanic removed three shock absorbers and discarded them prior to the plaintiff inspecting the bus. The plaintiff then moved to strike the bus company's answer based on its alleged spoliation of evidence.

In denying the motion, this Court affirmed the order of the trial court which refused to strike the defendant's answer as the plaintiff could not establish that the defendant's conduct deprived him of the means of proving his claim. In not striking the defendant's answer, this Court looked to the fact that the Department of Transportation's reports on inspections were provided, including the report of an inspection a few days before the trip in question, the bus maintenance records were

{G0030555}

EIM0088

32

provided, as were photographs of the three discarded shock absorbers taken before their removal. Additionally, this Court noted that the trial court found that the plaintiff would be able to depose the mechanic who removed the shock absorbers, the Department of Transportation inspector who inspected the bus as well as the bus company's expert who inspected the bus prior to the removal of the shock absorbers. <u>See also</u>, <u>Piazza v. Great Atlantic & Pacific Tea Co. Inc.</u>, 300 A.D.2d 381, 753 N.Y.S.2d 86 (2d Dept. 2002); <u>Mylonas v. Town of Brookhaven</u>, 305 A.D.2d 561, 759 N.Y.S.2d 752 (2d Dept. 2003) (where the striking of the defendant's answer for spoliation was not warranted as there was insufficient proof to conclusively establish that the defendant acted wilfully, contumaciously or in bad faith; this Court also held that the loss of the opportunity to inspect the vehicle and the loss of the repair and maintenance records would not deprive the plaintiff of the means of proving his claim).

Lazzaro, unlike in <u>Chung,</u> <u>supra</u> is not in violation of a Court order to preserve evidence. Nonetheless, even in <u>Chung</u>, <u>supra,</u> despite the violation of a Court order to preserve evidence, the defendant's answer was not stricken.

{G0030555}
EIM0088

33

In the case before this Court, the plaintiffs had the opportunity to depose Lazzaro and will have the opportunity to cross examine him at the time of trial. Further, the plaintiffs have a copy of the topography Dr. Brookner took before treatment rendered by Lazarro as well as Dr. Brookner's records (620-626). They also have Dr. Lazzaro's testimony, records and recorded results of the missing topography. They can also cross-examine Lazzaro on issues including the Humphrey Atlas Topography machine, his own practices with regard to record keeping and copying topographies, his interpretation of the topographies, etc. Further still, the plaintiffs have an opportunity to present the plaintiff to testify with regard to the treatment he received. Lastly, the plaintiffs may call upon any subsequent treater and expert to prove their case.

Here, as in <u>Chung</u>, <u>supra,</u> the striking of the defendants answer was a drastic and unwarranted remedy and the Court below erred in doing so.

Exhibit P
Page 44 of 46
Case 3:16-cv-00259-SLG   Document 31-16   Filed 01/22/18   Page 44 of 46
SOA 001244

## POINT IV

## THE MATTER WAS INCORRECTLY REFERRED TO A J.H.O. FOR AN INQUEST ON DAMAGES

Subsequent to receipt of the Court's order, the parties stipulated (1) to withdraw the matter from the inquest calendar, (2) to try the matter before a jury, and (3) to place the matter before Honorable Gerard Rosenberg for a further Pre-Trial Conference on September 25, 2007. Therefore, this issue has been resolved and is now moot.

{G0030555}

EIM0088

35

Case 3:16-cv-00259-SLG   Document 31-16   Filed 01/22/18   Page 45 of 46
SOA 001245

## CONCLUSION

**WHEREFORE**, it is respectfully requested that the order of the

Court below be reversed in its entirety, together with statutory costs and

disbursements.

Respectfully submitted,

GORDON & SILBER, P.C.

By:_____
FLORINA ALTSHILER
Attorneys for Defendants-Appellants
**DOUGLAS R. LAZZARO, M.D. and
LAZZARO EYE CENTER, LLP**
Office & Post Office Address
355 Lexington Avenue, 7th Floor
New York, New York 10017
212/834-0600

FLORINA ALTSHILER
    Of Counsel

Exhibit P
Page 46 of 46
SOA 001246