JAHNA LINDEMUTH
ATTORNEY GENERAL

Rebecca H. Cain (Alaska Bar No. 9811056)
Assistant Attorney General
Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, AK 99501
Telephone: (907) 269-6612
Facsimile: (907) 258-4978
Email: rebecca.cain@alaska.gov

*Attorney for Defendant State of Alaska*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| FLORINA ALTSHILER,<br><br>        Plaintiff,<br><br>v.<br><br>STATE OF ALASKA,<br><br>        Defendant. | Case No. 3:16-cv-00259-SLG |

## AFFIDAVIT OF JOHN B. SKIDMORE

STATE OF ALASKA    )
                                ) SS.
THIRD JUDICIAL DISTRICT  )

John B. Skidmore, being duly sworn, states as follows:

1.    I am the director of the Criminal Division at the Alaska Department of Law. I have held this position since May 26, 2011. As director, I am the final decision-maker in cases involving discipline or termination of assistant district attorneys.

2. When I became director, the Criminal Division had fallen into a practice of recruiting attorneys fresh out of law school. We had in the past occasionally recruited more experienced lawyers and I decided, based on recent losses of some experienced attorneys, that we needed to again attempt to recruit experienced attorneys with the goal of finding lawyers more committed to the work, who wanted to make a career as a prosecutor.

3. Florina Altshiler fell into the category of the more experienced attorneys who applied to the Criminal Division. Although her application was a little unusual, I hoped that her commitment to working on sexual assault cases and her experience in civil practice with a focus on litigation could make her a valuable asset to the Department of Law. Other members of the hiring committee did not favor hiring Ms. Altshiler, but I decided to take a chance on her nevertheless.

4. Ms. Altshiler's work was mixed. Her supervisors complained about her lack of punctuality and inattention to her non-trial case files; and although she obtained some good results in trial, and occasional praise for her performance in the courtroom, there were also disasters. These included an occasion when she volunteered to cover a trial in Bethel, but was so ill-prepared that the case collapsed. The Bethel District Attorney, June Stein, refused all future assistance from Ms. Altshiler as a result of this episode. Ms. Altshiler also had difficulty understanding what work was her responsibility and what she could expect paralegals and law office assistants to do.

*Altshiler v. State of Alaska* Case No. 3:16-cv-00259-SLG
Affidavit of John B. Skidmore Page 2 of 9
Case 3:16-cv-00259-SLG   Document 32   Filed 01/22/18   Page 2 of 10

5. After approximately a year in the misdemeanor unit, Ms. Altshiler was transferred to the sexual assault unit, despite her weaknesses with respect to administrative matters and case-load management. I and her supervisors hoped that with the combination of a much smaller case load of sex assault cases that were exclusively the type of case that she wanted to prosecute, she would manage her case files more efficiently and maintain better relationships with support staff. This transfer would also give us a second opinion about her performance from a second supervisor.

6. During the week of April 7, 2014, I received a phone call from Cheri Cadiente, Special Assistant to the Commissioner of the Department of Public Safety. She informed me that Florina Altshiler had filed a complaint against an Alaska State Trooper regarding text messages sent to Ms. Altshiler by the trooper during a training in Anchorage in early March and that during the investigation of her complaint, the troopers believed that Ms. Altshiler had not been honest with them. I requested a copy of the trooper's investigation report so that I could evaluate the allegations against Ms. Altshiler for myself.

7. Pages 13-44 of Exhibit F attached to the State's Motion for Summary Judgment are essentially the same as the report that I received with only minor differences, such as slightly different page breaks, the addition of correct titles for individuals, and the elimination of various abbreviations. After reviewing the report and exhibits, I set up an interview with Ms. Altshiler for April 17 to get her side of the story. Sharon Marshall, the Anchorage District Attorney, attended this meeting with me.

*Altshiler v. State of Alaska*  Case No. 3:16-cv-00259-SLG
Affidavit of John B. Skidmore  Page 3 of 9
Case 3:16-cv-00259-SLG   Document 32   Filed 01/22/18   Page 3 of 10

8. When I met with her on April 17, I asked Ms. Altshiler about the text messages she had received from the trooper. She described the texts from March 5, 2014, that were the subject of her complaint, but she denied that she had texted with the trooper on March 4. My impression was that she was very evasive and reluctant to offer a direct answer to my questions about the earlier text messages. During this same meeting, she also took the inconsistent positions both that there were no text messages from March 4 *and* that any previous messages would not be relevant to the exchange on March 5.

9. At the April 17 meeting, I encouraged Ms. Altshiler to permit the DPS investigators to examine her phone because it seemed likely that this would clear up any confusion about what had happened, but I did not believe that it was appropriate for me to order her to turn over her phone, so I did not do that.

10. Ms. Altshiler offered a series of inconsistent statements about the phone: that she had lost it; that she had sold it; that she was selling it.

11. Ms. Altshiler also expressed concerns about her privacy; and I assured her that the troopers would not be interested in any information other than messages sent between Ms. Altshiler and the trooper involved.

12. Although concerned that Ms. Altshiler was not being truthful with us in the April 17 meeting, I hoped that she would contact the troopers handling the investigation and provide them with additional information that would resolve the inconsistencies between the evidence and her story.

*Altshiler v. State of Alaska* Case No. 3:16-cv-00259-SLG
Affidavit of John B. Skidmore Page 4 of 9
Case 3:16-cv-00259-SLG   Document 32   Filed 01/22/18   Page 4 of 10

13. Following the meeting, Ms. Altshiler sent me an email indicating that she did not think she could have sent any text messages on March 4 because she had been at lunch with Ms. Marshall and other DAs and it would have been noticed if she sent 100 text messages in this period. She also indicated to me that she would be contacting her cell carrier to at least obtain her cell records showing the calls made, if not their substance. I encouraged her to work with the Troopers as it was their investigation.

14. On April 29, 2014, Ms. Cadiente forwarded to me an email from Investigator Brown summarizing his April 22 interview with Ms. Altshiler. I received a copy of the audio of that interview on April 30.

15. Sharon Marshall and I met with Ms. Altshiler again on May 6 after she had been interviewed by the troopers again. At this meeting, Ms. Altshiler suggested that perhaps she had sent text messages to the trooper on March 4 thinking that she was texting someone from a dating website. Because she had now offered a new story, I wanted time to reflect on whether and what personnel action, if any, might be appropriate, but that decision was delayed by other work commitments, including the launch of a new case management system.

16. We met again on May 22. Before this meeting, I had determined that my concerns with her credibility and honesty were such that I could no longer trust her judgment and that termination of her employment was appropriate. Repeatedly during my interactions with Ms. Altshiler she did not appear to grasp the seriousness of the situation. She did not seem to understand why the troopers were skeptical of her story, despite her

*Altshiler v. State of Alaska*  
Affidavit of John B. Skidmore  
Case No. 3:16-cv-00259-SLG  
Page 5 of 9  
Case 3:16-cv-00259-SLG   Document 32   Filed 01/22/18   Page 5 of 10

inability to coherently and consistently explain why she had represented that the only texts she sent to the trooper were those presented on March 5. Nor did she seem to understand the trooper's need to resolve the issue of whether the trooper had lied to them during the investigation, despite the fact that as a prosecutor she should be well aware of the implications such a claim could have on the trooper's credibility as a witness in future proceedings. Although she further alleged that the trooper might have made a threatening phone call to her attempting to get her to cease her complaint, she similarly did not seem to understand why the troopers were so concerned about that accusation and wanted to investigate it further.

17. When I told her that based on the information available to me, I had decided that I could not trust her judgment, she offered new information again: this time she explained that she had declined to turn over her phone because she was having an affair with a colleague in the office and that he had asked her not to turn over her phone.

18. Although I had initially intended to terminate Ms. Altshiler at this meeting, I wanted to consider whether this new information should affect my decision—in essence, whether it mitigated my concerns about her lack of honesty and unwillingness to cooperate with the troopers—so I delayed the final determination.

19. Later on May 22, Ms. Altshiler returned to my office and said that she now understood what I and others such as Paul Miovas had been trying to communicate to her all along about the role and position of a prosecutor in the criminal justice system. That role and position strongly spoke to the importance of full disclosure and candor by a

*Altshiler v. State of Alaska*  Case No. 3:16-cv-00259-SLG
Affidavit of John B. Skidmore  Page 6 of 9
Case 3:16-cv-00259-SLG   Document 32   Filed 01/22/18   Page 6 of 10

prosecutor in a matter such as this; and she asked for another chance. I believed her to be sincere; and so I told her I would take this into consideration.

20. After discussing the matter with other senior management in the Criminal Division, I decided to give Ms. Altshiler another chance, offering her a transfer to a different office along with two weeks of unpaid leave and a one-year probationary period.

21. We presented the transfer option to Ms. Altshiler at a meeting on May 23. I had thought that the Dillingham office was the best option for transferring Ms. Altshiler, because that office is supervised out of the Anchorage office and both Ms. Marshall and Mr. Campion were willing to continue to supervise her. Ms. Altshiler had expressed concerns about her privacy and her privacy was best protected by working in Dillingham because that would mean no other personnel in the Department would have to learn about this incident. Further, because she would be the only assistant district attorney in the office, we could be confident that she was responsible for any successes or failures handling the case load; and if there were any questions about her honesty in the future, we felt we could quickly and easily sort out the truth. We gave Ms. Altshiler the weekend to consider the offer.

22. When we met again the next week, however, Ms. Altshiler declined to go to Dillingham, indicating that she would consider moving to the Palmer office. In order for that to happen, I needed to consult with the Palmer Office Chief and Rick Svobodny, the Deputy Attorney General, so we agreed to meet again later in the week.

*Altshiler v. State of Alaska*
Affidavit of John B. Skidmore

Case No. 3:16-cv-00259-SLG
Page 7 of 9

Case 3:16-cv-00259-SLG   Document 32   Filed 01/22/18   Page 7 of 10

23. Before I could determine whether a transfer to Palmer was possible, I received a call from Kathy Hansen at the Office of Victim's Rights to inquire why the department was firing an employee for reporting sexual harassment. I was taken aback by the call. While I wanted to set the record straight for Ms. Hansen, I could not discuss a confidential personnel matter with her. I heard soon after that Ms. Altshiler had been at the Office of Victim's Rights when Ms. Hansen called, suggesting that she was the source of Ms. Hansen's information, partial and misleading as it was.

24. Because of this call, I concluded that Ms. Altshiler's apparent recognition of the legitimate questions raised by her lack of candor in the investigation had been insincere, thus reinforcing my sense that she could not be trusted. And her decision to involve another state agency with which the Criminal Division works closely—providing misleading information which would be very difficult correct, given state confidentiality laws—further demonstrated her lack of judgment. As a result, I decided that termination was in fact appropriate after all.

25. I prepared language for a termination letter and asked my administrative assistant to prepare the letter on department stationary for my signature in advance of meeting with Ms. Altshiler on May 30.

26. Shortly after these events, I prepared a memorandum for inclusion in Ms. Altshiler's supervisory file. It is attached to the motion for summary judgment as Exhibit G. It is an accurate summary of the events of April and May 2014, except that the final meeting with Ms. Altshiler occurred on May 30, not May 29. I believe that the date in the

*Altshiler v. State of Alaska*  
Affidavit of John B. Skidmore  
Case No. 3:16-cv-00259-SLG  
Page 8 of 9  
Case 3:16-cv-00259-SLG   Document 32   Filed 01/22/18   Page 8 of 10

memorandum is wrong because I relied on my Outlook Calendar for dates when writing it—the meeting with Ms. Altshiler was moved several times in order to accommodate Mr. Campion's schedule that week and my calendar was not updated to show the final meeting time.

_____
John B. Skidmore

SUBSCRIBED AND SWORN TO before me this 22nd day of January, 20 18.

_____
Notary Public in and for Alaska
My Commission Expires: w/office

*Altshiler v. State of Alaska*　　　　　　　　　　　　Case No. 3:16-cv-00259-SLG
Affidavit of John B. Skidmore　　　　　　　　　　　　Page 9 of 9
Case 3:16-cv-00259-SLG   Document 32   Filed 01/22/18   Page 9 of 10

Certificate of Service

I certify that on January 22, 2018, the **AFFIDAVIT OF JOHN B. SKIDMORE** was served electronically on:

Christopher V. Hoke
Hoke Law
PO Box 141502
Anchorage, AK 99514
chris@hoke-law.com

Daniel I. Pace
Pace Law Offices
101 E. 9th Ave., Ste 7A
Anchorage, AK 99501
dan@pacelawoffices.com

/s/Rebecca H. Cain

*Altshiler v. State of Alaska* Case No. 3:16-cv-00259-SLG
Affidavit Certificate of Service Page 1 of 1
Case 3:16-cv-00259-SLG Document 32 Filed 01/22/18 Page 10 of 10